1          Honorable John C. Coughenour

2

3

4

5

6                        UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
7                                  AT SEATTLE

8

9    DAHL TUG & BARGE, INC.,
     a Washington corporation,

10                Plaintiff,                         C09-0756-JCC

11        v.                                         **FINDINGS OF FACT &
                                                     CONCLUSIONS OF LAW**
12   CASHMAN EQUIPMENT CORP.,
     a Massachusetts corporation,
13
                  Defendant.
14

15

16

17        This matter comes before the Court after a bench trial. (*See* Dkt. Nos. 54 & 55). Having heard

18   the testimony of the witnesses and considered those exhibits which were admitted at trial, and having

19   heard the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

20   **I.    FINDINGS OF FACT**

21        1.    Plaintiff Dahl Tug & Barge is a Washington corporation with a principal place of

22             business in Seattle, Washington.

23        2.    Defendant Cashman Equipment Corporation is a Massachusetts corporation with a

24             principal place of business in Boston, Massachusetts.

25

26   ORDER, C09-0756-JCC
     Page 1

1

3.      The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2

4.      Dahl is the owner of the tugboat *Triton,* a vessel registered under the laws of the United

3

States.

4

5.      On September 19, 2008, Cashman hired the *Triton* for one round-trip voyage from Seattle

5

to Shanghai, China. Under the terms of the charter, the *Triton* was to leave Seattle and

6

arrive in Shanghai without tow, from whence she was to tow two barges to a United

7

States Gulf Coast port *via* the Panama Canal. She was then to return to Seattle without

8

tow.

9

6.      When the charter agreement was executed, the parties expected a charter term of

10

approximately three months. In fact, the charter lasted approximately nine months.

11

7.      The *Triton* left Seattle for Shanghai on September 23, 2008. She arrived without incident.

12

She then lay idle for fifty-four days, waiting to secure certain licenses and other

13

permissions from the Chinese Government.

14

8.      The *Triton* left Shanghai with two barges under tow. She towed both barges across the

15

Pacific Ocean, entered the Gulf of Mexico through the Panama Canal, and arrived at a

16

United States Gulf Coast port in Louisiana on March 23, 2009.

17

9.      Disputes arose between the parties on the accrual and payment of charter hire and

18

expenses for the period during which the *Triton* languished in Shanghai. These claims,

19

with the exception of Dahl's claim for insurance and customs expenses incurred in 2008,

20

were settled by the parties in January 2009.

21

10.     With the consent of Cashman, Dahl took the *Triton* off hire on March 24, 2009. Dahl

22

took the *Triton* off hire to rest the crew, to allow Cashman to inspect the vessel with an

23

eye toward purchasing her, and so that the vessel could undergo necessary repairs.

24

//

25

26

ORDER, C09-0756-JCC
Page 2

1    11.   As Dahl timely advised Cashman, maintenance and repair on the *Triton* was complete on

2          April 16, 2009. The vessel was ready to resume service on that same date.

3    12.   The *Triton* remained at a Cashman facility in Amelia, Louisiana, or at a nearby shipyard

4          until May 6, 2009. During this time, Cashman inspected the vessel with an eye toward

5          purchasing her.

6    13.   Cashman decided not to purchase the *Triton*, and so informed Dahl on May 6, 2009.

7    14.   The *Triton* departed Amelia en route Seattle on May 27, 2009.

8    15.   The delays experienced in Louisiana in getting underway for Seattle after Cashman

9          notified Dahl of Cashman's decision not to purchase the Tug were *not* caused solely by

10         Dahl's fault within the meaning of the charter.

11   16.   The *Triton* was redelivered to Dahl in Seattle on June 20, 2009.

12   17.   Cashman has failed to make a single payment for any services rendered or costs incurred

13         after the *Triton* arrived in Louisiana on March 23, 2009.

14   18.   Cashman is indebted to Dahl for charter hire from April 16, 2009, through June 20, 2009,

15         plus allowable expenses under the charter.

16   19.   The *Triton* was seaworthy at all times from her departure from Seattle on September 23,

17         2008, to her re-delivery in Seattle on June 20, 2009.

18   20.   All work requested by Cashman was undertaken and accomplished by the Tug with

19         reasonable dispatch from her departure from Seattle on September 23, 2008, to her

20         re-delivery in Seattle on June 20, 2009.

21   21.   Cashman's payment of $126,000 for twenty-one days of charter hire from April 16

22         through May 6, 2009, was due April 16, 2009. Interest accrued at twelve percent *per*

23         *annum* to November 1, 2010, in the amount of $23,363.51.

24   //

25

26   ORDER, C09-0756-JCC
     Page 3

1    22.    Cashman's payment of $126,000 for twenty-one days of charter hire from May 7

2            through May 27, 2009, was due May 7, 2009. Interest accrued at twelve percent *per*

3            *annum* to November 1, 2010, in the amount of $22,493.59.

4    23.    Cashman's payment of $126,000 for twenty-one days of charter hire from May 28

5            through June 17, 2009, was due May 28, 2009. Interest accrued at twelve percent *per*

6            *annum* to November 1, 2010, in the amount of $21,623.67.

7    24.    Cashman's payment of $18,000 for three days of charter hire from June 18 through June

8            20, 2009, was due June 18, 2009. Interest accrued at twelve percent *per annum* to

9            November 1, 2010, in the amount of $2,964.82.

10   25.    Cashman's reimbursement of $23,381.25 for 10,000 gallons of fuel oil at $2.15 per

11           gallon, plus California sales tax in the amount of $1,881.25, was due June 15, 2009.

12           Interest accrued at twelve percent *per annum* to November 1, 2010, in the amount of

13           $3,874.24.

14   26.    Cashman's reimbursement of $141,229.30 for 69,262 gallons of fuel oil at $2.04 per

15           gallon, less $4,692.00 for the cost of fuel consumed during the twenty-three days the

16           *Triton* was off hire in Amelia, was due June 20, 2009. Interest accrued at twelve percent

17           *per annum* to November 1, 2010, in the amount of $22,399.59.

18   27.    Cashman's reimbursement of $9,436.70 for 1,105 gallons of lube oil at $8.54 per gallon

19           was due June 20, 2009. Interest accrued at twelve percent *per annum* to November 1,

20           2010, in the amount of $1,548.14.

21   28.    Cashman's reimbursement of $25,650.00 for six months of increased insurance premiums

22           was due April 13, 2010, the date on which the invoice was first properly presented to

23           Cashman. Interest accrued at twelve percent *per annum* to November 1, 2010, in the

24           amount of $1,703.44.

25

26   ORDER, C09-0756-JCC
     Page 4

1     29.    Cashman's reimbursement of $144.00 for customs expenses was due September 30,

2         2008. Interest accrued at twelve percent *per annum* to November 1, 2010, in the amount

3         of $36.07.

4     30.    Cashman's reimbursement of $1,075.00 for customs expenses was due February 19,

5         2009. Interest accrued at twelve percent *per annum* to November 1, 2010, in the amount

6         of $219.12.

7     31.    Cashman's reimbursement of $179.00 for customs expenses was due August 11, 2009.

8         Interest accrued at twelve percent *per annum* to November 1, 2010, in the amount of

9         $26.31.

10     32.    Cashman's reimbursement of $342.40 for customs expenses was due August 27, 2009.

11         Interest accrued at twelve percent *per annum* to November 1, 2010, in the amount of

12         $48.52.

13     33.    Cashman's reimbursement of $4,818.75 for Panama Canal transit fees and expenses, less

14         $750.00 for the cost of certain repairs and water taxi services, was due July 20, 2009.

15         Interest accrued at twelve percent *per annum* to November 1, 2010, in the amount of

16         $627.37.

17  **II.**    **CONCLUSIONS OF LAW**

18     1.    Jurisdiction is vested in this Court by virtue of 28 U.S.C. §§ 1332–1333.

19     2.    The claims alleged are admiralty and maritime claims within the meaning of Rule 9(h) of

20         the Federal Rules of Civil Procedure.

21     3.    This Court has personal jurisdiction over both Dahl and Cashman.

22     4.    Venue is proper in this Court.

23     5.    The charter is construed according to the general maritime law of the United States.

24     6.    The charter rate of hire was $6,000.00 per day.

25

26  ORDER, C09-0756-JCC

7.      Hire payments were due twenty-one days in advance, and interest on late payments was to accrue at one percent per month.

8.      Cashman also agreed to pay the costs of "all fuel, lubricants, filters, water, port charges, pilotage, agencies, duties, canal tolls, dockage and wharfage charges, assist towage, flag dispensation, costs of visas, entry and exit permits, increased insurance premiums charged in light of the liability scheme set out in this charter party, and other similar or dissimilar expenses upon or in connection with the service of the vessel."

9.      Reimbursement for costs advanced by Dahl was due ten days after Dahl presented Cashman with an invoice for such charges, and interest was to accrue at one percent per month on late payments.

10.     Dahl agreed to exercise due diligence to see that the *Triton* was delivered and maintained in a seaworthy condition, to "man, victual, navigate, operate, supply, repair, and maintain the vessel," and, subject to the Tug master's discretion, to undertake and accomplish all work requested by Cashman "with reasonable dispatch."

11.     The charter provided that if the *Triton* broke down or required maintenance for longer than forty-eight hours, hire was to be suspended for the period of any such breakdown or other interruption in service caused solely by Dahl's fault. In all other instances, hire continued at the full rate for the entire period of breakdown or interruption in service.

12.     Dahl waived the right to receive hire for the period of March 24 through April 15, 2009.

13.     The *Triton* resumed service on hire under the charter on April 16, 2009.

14.     Dahl duly performed all of its obligations under the charter.

15.     Despite repeated demands, Cashman has failed to pay hire and expenses for the charter of the *Triton* in accordance with the terms of the charter.

//

16.    Cashman is accordingly in breach of the charter and is indebted to Dahl for hire, expenses advanced, and interest accrued.

17.    Prejudgment interest accrues on amounts owed by Cashman to Dahl at the rate of twelve percent *per annum.*

18.    Cashman is liable to Dahl in the amount of $596,814.40 plus interest to November 1, 2010, in the amount of $100,928.39, for a total of $697,742.79.

ENTERED this 9th day of December, 2010.

JOHN C. COUGHENOUR
United States District Judge

ORDER, C09-0756-JCC
Page 7